1  **DAVID YEREMIAN & ASSOCIATES, INC.**
   David Yeremian (Cal. Bar No. 226337)
2  david@yeremianlaw.com
   535 N. Brand Blvd., Suite 705
3  Glendale, California 91203
   Telephone: (818) 230-8380
4  Facsimile: (818) 230-0308

5  **SOMMERS SCHWARTZ, P.C.**
6  Kevin J. Stoops (*pro hac vice* forthcoming)
   Rod M. Johnston (*pro hac vice* forthcoming)
7  One Towne Square, 17th Floor
8  Southfield, Michigan 48076
   Telephone: 248-355-0300
9  Facsimile: 248-746-4001
   Email: kstoops@sommerspc.com
10 Email: rjohnston@sommerspc.com

11
   *Attorneys for Plaintiffs and Proposed*
12 *Collective and Class members*

13

14          **UNITED STATES DISTRICT COURT**
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15                     **WESTERN DIVISION**

16

| | |
|---|---|
| 17 **CARLA PURNELL and TANISHA SLAUGHTER,** individually and on behalf of all others similarly situated, | Case No.: |
| 18 | **COMPLAINT FOR VIOLATION OF THE FLSA AND STATE LAW** |
| 19 Plaintiffs, vs. | **CLASS ACTION, COLLECTIVE ACTION, AND REPRESENTATIVE ACTION** |
| 20 **CLEARVIEW CENTERS, LLC, 1334 WESTWOOD, LLC, 2432 WALNUT, LLC, 2435 GLYNDON, LLC, QUAINT LLC**, and **MICHAEL ROY**, jointly and severally, | **DEMAND FOR JURY TRIAL** |
| 23 Defendants. | |

24

25        Plaintiffs, Carla Purnell and Tanisha Slaughter ("Plaintiffs"), on behalf of

26 themselves and all others similarly situated, file this class, collective, and

27 representative action against Clearview Centers, LLC; 1334 Westwood, LLC; 2432

28

                                    1

Walnut, LLC; 2435 Glyndon, LLC; Quaint LLC (the "LLC Defendants"); and Michael Roy ("Defendant Roy") (hereinafter collectively referred to as "Defendants" or "Clearview"), jointly and severally, and allege as follows:

## INTRODUCTION

1.     Defendants are Limited Liability Companies doing business collectively as Clearview Treatment Programs. *See, generally,* https://www.clearviewtreatment.com/ (last visited on January 24, 2018). Clearview Treatment Programs is "a comprehensive mental health and dual diagnosis treatment center, and the first of its kind in Southern California and Los Angeles." https://www.clearviewtreatment.com/staff-frame/?sid=541 (last visited on January 24, 2018). "Clearview Treatment Programs provides a broad array of programs and is nationally recognized as a leader in the treatment of psychiatric disorders and dual diagnosis treatment." *Id.* Clearview offers "residential, day, and outpatient treatment programs" where patients "receive individualized and specially tailored treatment in a calming and intimate setting." *See* https://www.clearviewtreatment.com/what-we-treat/ (last visited January 23, 2018).

2.     In order to carry out its treatment and rehabilitation programs, Clearview employs certain nonexempt, hourly-paid workers as Community Counselors (hereinafter "Counselors") who are "responsible for monitoring and supervising psychiatric clients in their daily programs." See https://www.clearviewtreatment.com/employment-opportunities/ (last visited on January 17, 2018).

3.     Plaintiffs either work or have worked for Clearview as non-exempt Counselors.  Plaintiffs bring this action on behalf of all similarly situated individuals, as set forth in the class definitions in paragraphs 81 and 86 below. Plaintiffs and the individuals similarly situated to them are referred to herein generally as "Class

Members" or "Counselors."

4.     Clearview maintains and has maintained a policy and practice of failing to pay Plaintiffs and Class Members the correctly calculated overtime rate of time-and-a-half their "regular rate" and failing to pay Plaintiffs and Class Members for all hours worked, such as time spent checking and responding to emails, calls, and texts during non-work hours, or for being required to report to work 15 minutes before their scheduled shifts.[1] Plaintiffs and Class Members spend significant time performing this off-the-clock work, but Clearview does not compensate them for it. Because much of this time qualifies as overtime within the meaning of applicable federal and state laws, Plaintiffs and Class Members are owed overtime pay for this uncompensated, off-the-clock work.

5.     In addition, Clearview maintains and has maintained a policy and practice of failing to provide Plaintiffs and Class Members with uninterrupted, 30-minute meal periods for every five hours worked or one hour's wages in lieu thereof, and failing to provide Plaintiffs and Class Members with uninterrupted, 10-minute rest periods for every four hours or major fraction thereof worked or one hour's wages in lieu thereof, in addition to wages for time worked during meal periods.

6.     Plaintiffs, individually and on behalf of all others similarly situated, seek to recover unpaid wages and other damages owed under: (1) the Fair Labor Standards Act ("FLSA") as a 29 U.S.C. § 216 collective action, (2) California Labor Code §§ 510 and 1194 for unpaid overtime compensation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (3) California Labor Code §§ 1182.12, 1194, 1194.2, 1197, and 1198 for unpaid minimum wages as a class action

---

[1] The Clearview Treatment Programs Employee Handbook, dated July 20, 2017, contemplates that, "All employees should regard coming to work on time, working their shift as scheduled and leaving at the scheduled time as essential functions of their jobs i.e., good attendance habits, are an integral part of every employee's job description. For example, 'good attendance habits' include the following: ***Reporting for work at your regularly scheduled start time***[.]" Emphasis added.

pursuant to Rule 23 of the Federal Rules of Civil Procedure, (4) California Labor Code §§ 221 and 223 for unlawful deductions and failure to pay wages at the designated rate as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (5) California Labor Code §§ 226.7 and 512 for failure to provide meal and rest periods or one hour's wages in lieu thereof as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (6) California Labor Code § 226 for failure to provide accurate wage statements as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (7) California Labor Code §§ 201-203 for failure to pay all wages earned in a timely manner as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, (8) the Private Attorney General Act ("PAGA"), and (9) California Business & Professions Code § 17200 *et seq.* as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION

7.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367.

8.     This Court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

9.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

10.     Venue is proper in the Central District of California because Clearview maintains its principal place of business in this District, and a substantial portion of the events forming the basis of this suit occurred in this District.

## INTRADISTRICT ASSIGNMENT

11.     A substantial part of the events or omissions giving rise to the claims

occurred in Los Angeles County, and therefore this action is properly assigned to the Western Division. Further, Clearview employed Plaintiffs at its facilities in Venice, California, and Plaintiffs reside in Los Angeles County.

## PARTIES AND PERSONAL JURISDICTION

12.    Plaintiff, Carla Purnell, is an individual currently residing in Los Angeles, California.    Clearview employed Plaintiff Purnell as a Community Counselor from May 2016 to the present.  Plaintiff Purnell signed a consent form to join this lawsuit, which is attached as ***Exhibit A***.

13.    Plaintiff, Tanisha Slaughter, is an individual currently residing in Gardena, California. Clearview employed Plaintiff Slaughter as a Community Counselor from July 2015 to October 2017. Plaintiff Slaughter signed a consent form to join this lawsuit, which is attached as ***Exhibit B***.

14.    Defendant, Clearview Centers, LLC, is a California Limited Liability Company with a service of process address listed as 911 Coeur D'Alene Avenue, Venice, California 90291 and a California Secretary of State File Number of 200131910096. Its Chief Executive Officer, President, sole manager, and registered agent for service in California is Michael Roy.

15.    Defendant, 1334 Westwood, LLC, is a California Limited Liability Company with a service of process address listed as 911 Coeur D'Alene Avenue, Venice, California 90291 and a California Secretary of State File Number of 200631510190. Its Chief Executive Officer, sole manager, and registered agent for service in California is Michael Roy.

16.    Defendant, 2432 Walnut, LLC, is a California Limited Liability Company with a service of process address listed as 911 Coeur D'Alene Avenue, Venice, California 90291 and a California Secretary of State File Number of 200631510188. Its Chief Executive Officer, sole manager, and registered agent for service in California is Michael Roy.

17.    Defendant, 2435 Glyndon, LLC, is a California Limited Liability

Company with a service of process address listed as 911 Coeur D'Alene Avenue, Venice, California 90291 and a California Secretary of State File Number of 200631510186. Its Chief Executive Officer, sole manager, and registered agent for service in California is Michael Roy.

18.   Defendant, Quaint LLC, is a California Limited Liability Company with a service of process address listed as 911 Coeur D'Alene Avenue, Venice, California 90291 and a California Secretary of State File Number of 201515210351. Its registered agent for service in California is Michael Roy.

19.   Defendant, Michael Roy, is an individual who is a resident and citizen of California. Defendant Roy is Clearview's founder, owner, President, Executive Director, Chief Executive Officer, and sole manager, and is involved in and controls Clearview's day-to-day business. Defendant Roy maintains a presence in the Clearview offices, takes part in regular business meetings, and maintains control of Clearview's business operations including Clearview's compensation scheme in connection with its Counselors. Defendant Roy held plenary power over the employment of Plaintiffs and other Class Members. In particular, Defendant Roy had the power to hire and fire his employees, supervised and controlled the work schedules and employment conditions of his employees, determined the rate and method of payment of his employees, and maintained records for his employees. According to Clearview's website,

> In 2000, Michael [Roy] founded Clearview Treatment Programs, a comprehensive mental health and dual diagnosis treatment center, and the first of its kind in Southern California and Los Angeles. Clearview Treatment Programs provides a broad array of programs and is nationally recognized as a leader in the treatment of psychiatric disorders and dual diagnosis treatment.
>
> Michael [Roy] also founded Clearview Women's Center for Borderline Personality and Emotional Disorders in 2008, the first residential treatment center for Borderline Personality Disorder (BPD) on the West Coast. Clearview offers one of the most comprehensive

6

continuums of care available, including residential treatment, day treatment, intensive outpatient, outpatient treatment, and transitional living programs.

*See* https://www.clearviewtreatment.com/staff-frame/?sid=541, (last visited January 19, 2018).

20.    Clearview operates its treatment centers and rehabilitation programs from at least five locations, four of which are residences that house Clearview's clients/patients. The residences are in close proximity to each other (within one mile) and are located at the following addresses:

(a)    911 Coeur D'Alene Avenue, Venice, California 90291 (the "CDA Residence"). The CDA Residence serves as Clearview's main location, or headquarters. Each day at approximately 8:00 a.m., the Counselors transport Clearview's clients to the CDA Residence to take part in the treatment and rehabilitation programs that are scheduled for that particular day. At approximately 6:00 p.m., the Counselors return Clearview's clients to the Walnut, Glyndon, or Grandview residences identified below.

(b)    2432 Walnut Avenue, Venice, California 90291 ("The Walnut Residence"). The Walnut Residence is a co-ed residence and houses up to 10 Clearview clients.

(c)    2435 Glyndon Avenue, Venice, California 90291 ("The Glyndon Residence"). The Glyndon Residence is a women's only residence and houses up to six Clearview clients.

(d)    2616 Grandview Avenue, Venice, California 90291 ("The Grandview Residence"). The Grandview Residence houses up to 10 Clearview clients and is the official location of the Clearview Women's Center, which specializes in borderline personality and emotional disorders. *See, generally*, https://www.clearviewwomenscenter.com/ (last visited on February 1, 2018).

21.    The fifth location—1334 Westwood Blvd, Los Angeles, CA 90024 (the "Westwood Location")—is an outpatient adult mental health clinic providing diagnostic, treatment, and prescriptive services related to mental and behavioral

disorders in adults.

22.    Plaintiffs and all Class Members worked at multiple residences or locations, often in the same day, and their job duties, responsibilities, and employment conditions did not vary from location to location.

23.    The LLC Defendants are—and at all relevant times herein, were—California Limited Liability Companies doing business within the State of California, including, but not limited to, Los Angeles County. At all times relevant herein, Defendants, including Defendant Roy, were subject to the Labor Code of the State of California and to the Orders of the Industrial Welfare Commission ("IWC") promulgated by the Commission pursuant to and by virtue of the authority vested in it by Sections 1171 through 1204 of the Labor Code and Article 14, Section 1 of the Constitution of the State of California.

24.    At all times relevant herein, there were in full force and effect Orders of the Industrial Welfare Commission covering various occupations in which Defendants' employees were employed, including but not limited to IWC Order No. 5-2001 covering the "Public Housekeeping Industry." The IWC Orders are codified at Title 8, California Code of Regulations, Section 11010, et seq.

25.    Plaintiffs are informed and believe and thereon allege that Defendants are an integrated enterprise in that there is an interrelation of operations between them, there is common management between them, there is centralized control of labor relations between them, and there is common ownership or financial control between them.

26.    Plaintiffs are informed and believe and thereon allege that if Defendants are not an integrated enterprise, that Defendants have acted as joint employers with respect to the Counselors because Defendants have:

(a)    jointly exercised meaningful control over the work performed by the Counselors;

(b)    jointly exercised meaningful control over the Counselors' wages, hours

8

and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks the Counselors' performed;

(c)    jointly required the Counselors to perform work which is an integral part of Defendants' businesses, and

(d)    jointly exercised control over the Counselors in that the Counselors, as a matter of economic reality, are dependent upon each Defendant, who share the power to set the Counselors' wages and determine their working conditions, and who jointly reap profits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment, and for other related reasons.

27.    This Court has personal jurisdiction over Clearview because it maintains its principal place of business and conducts regular and systematic business activities in California. Specifically, Clearview "operates multiple treatment centers in the Southern California beach communities and the Los Angeles area," *see* https://www.linkedin.com/company/clearview-treatment-programs/ (last visited on January 18, 2018), and "Clearview's residential treatment programs are all located in Venice Beach," *see* https://www.clearviewtreatment.com/about-us/ (last visited on January 23, 2018). In addition, Clearview advertises, employs workers (such as Plaintiffs), and owns property in California; and Defendant Michael Roy is a resident and citizen of California.

**GENERAL ALLEGATIONS**

28.    Clearview employed Plaintiff, Carla Purnell, as a Counselor at its Venice, California residential treatment centers. Clearview employed Plaintiff Purnell in that capacity from May 2016 to the present, and at all times, paid her by the hour, most recently at the rate of $15.00 per hour, with an overtime rate of $22.50 per hour for hours worked in excess of forty in a single workweek and for hours in excess of eight hours in a work day.

29.    Clearview employed Plaintiff, Tanisha Slaughter, as a Counselor at its

Venice, California residential treatment centers. Clearview employed Plaintiff Slaughter in that capacity from July 2015 to October 2017, and at all times, paid her by the hour, most recently at the rate of $16.17 per hour, with an overtime rate of $24.255 per hour for hours worked in excess of forty in a single workweek and for hours in excess of eight hours in a work day.

30.    Clearview employs Plaintiffs and other Counselors to monitor and supervise its psychiatric clients in their daily programs. *See* https://www.clearviewtreatment.com/employment-opportunities/ (last visited on January 17, 2018).

31.    Clearview provides Plaintiffs and all other Counselors with a "Clearview Treatment Programs Employee Handbook" when they are hired, which requires them to follow all of the current policies, procedures, and practices as defined by the Handbook. This document is in Clearview's possession.

32.    The primary job duties of Plaintiffs and the Counselors are to:

(a)    Observe and monitor client behaviors;

(b)    Facilitate assigned groups/meetings/activities per program schedule;

(c)    Coordinates milieu treatment with the clinical team;

(d)    Read/Write shift log (including check in and check out as well as a summary of the shift events);

(e)    Transport clients per supervisor's directives (for court, ancillary services, etc.);

(f)    Supervises self-administration of client medications (only after being provided with appropriate training);

(g)    Provide coaching to reduce dysregulation and suicidal ideation as well as to reduce target behaviors such as self-harm, dropping out of treatment, abusing substances, etc.;

(h)    Provide Dialectical Behavior Therapy (DBT) coaching to clients;

(i)     Orientation of new clients to house rules;

(j)     Conduct check-in to residence with new clients including search of items brought to the facility and lock-up of contraband and medications;

(k)     One-on-one supervision of at-risk clients (ATA risk; suicidal ideation; etc.) per directive from Clinical Director or Executive Director;

(l)     Follows emergency procedures exactly (including following paging protocols, following directives given exactly);

(m)     ATA prevention; including one-on-one peer counseling, notification of assigned counselor and immediate notification of Clinical Director or Executive Director whenever a client talks about leaving the program;

(n)     Conducts UA drug screen collection when directed, following appropriate procedures;

(o)     Attend all relevant training, including in-services;

(p)     Meet regularly with supervisor(s); and

(q)     Perform all other duties as necessary for the good of the agency as instructed by supervisor.

33.     Clearview's Counselors are also required to complete housekeeping tasks, including but not limited to taking out the trash, laundering bedding, and closing the houses before going to off-site meetings.

34.     Clearview employs and has employed all Counselors on an hourly, nonexempt basis to provide the above-described services for its clients.

**Pre- and Post-Shift Off-the-Clock Work**

35.     Up until at least November 2015, and perhaps continuing thereafter, Clearview trained, instructed, and required its p.m. shift Counselors to report to work 15 minutes before their scheduled shifts for what was known as the "van switch."

36.     Each day at approximately 8:00 a.m., the a.m. shift Counselors are

required to transport Clearview's clients from the Glyndon, Grandview, and Walnut Residences to the CDA Residence to take part in the treatment and rehabilitation programs scheduled for that particular day. At approximately 6:00 p.m., the p.m. shift Counselors shuttle Clearview's clients back to the Glyndon, Grandview, and Walnut Residences. Clearview's Counselors shuttle the clients to and from the CDA Residence using a small fleet of Clearview-owned vans.

37.    Plaintiff Slaughter often worked the p.m. shift, which was scheduled from 3:45 – 11:45 p.m. Plaintiff Slaughter and other p.m. shift Counselors were required to report to the Glyndon, Grandview, or Walnut Residences at 3:30 p.m., where they would wait for the a.m. shift Counselors to deliver the vans to them. Plaintiff Slaughter and the p.m. shift Counselors would then drive the vans to the CDA Residence and would later use the vans to shuttle Clearview's patients back to the Glyndon, Grandview, or Walnut Residences.

38.    Notwithstanding the fact that Plaintiff Slaughter and the other p.m. shift Counselors were required to report to work at 3:30 p.m., they were trained and instructed by Clearview's management, including Program Manager Liz Gherna, to put 3:45 p.m. on their timesheets. This pre-shift work took a substantial amount of time each day, yet Clearview failed to pay (and maintained a common policy in which it did not pay) Plaintiffs and Class Members any compensation for this off-the-clock work.

39.    In addition to the pre-shift, off-the-clock work described above, Plaintiffs and Class Members are also required to perform substantial amounts of post-shift, off-the-clock work. After Plaintiffs and Class Members complete their shifts, they are required to check and respond to work-related emails, calls, and texts during non-work hours. This post-shift, off-the-clock work takes substantial time—generally anywhere from five to 20 or more minutes per day—and is not de minimis. Clearview fails to pay (and maintains a common policy in which it does not pay) Plaintiffs and Class Members any compensation for this post-shift, off-the-clock

work.

## **Meal and Rest Period Violations**

### ***Employers Must Provide Uninterrupted, 30-minute Meal Breaks***

40.    In addition to the off-the-clock violations described above, Clearview failed to provide Plaintiffs and Class Members with uninterrupted, work-free 30-minute meal periods, or one hour's wages in lieu thereof, for shifts in excess of five hours. Nor did Clearview provide Plaintiffs and Class Members with a second uninterrupted, work-free 30-minute meal period for shifts in excess of 10 hours.

41.    California Labor Code Sections 226.7 and 512, as well as Section 11 of California Wage Order No. 5-2001, establish the following requirements for meal periods:

- "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes" (Wage Order, Section 11).

- An employer may not employ an employee for a work period of more than 10 hours per day without providing a second meal period of not less than 30 minutes (Labor Code, Section 512).

- If an employer "fails to provide an employee a meal period," the employer "shall pay" the employee one hour of pay for each work day that the meal period is not provided (Labor Code Section 226.7; Wage Order, Section 11).

42.    California Labor Code Section 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work. Thus, a first meal period must begin sometime *before* an employee has worked five hours. For example, an employee who starts working at 8 a.m. must begin the first meal period no later than 12:59 p.m. Similarly, a second meal period has to begin *before* an employee has worked 10 hours.

43.    If the employer fails to provide a timely meal period, then the employer

must pay one hour of premium pay to the employee. Labor Code Section 226.7; Wage Order, Section 11. This obligation is triggered even if the delay is caused by an unusually busy period or co-workers who are out sick, among other reasons. It does not matter that the employee got a meal period.

44.    Notwithstanding the California Labor Code and Wage Order requirements cited above, Clearview failed to provide Plaintiffs and Class Members with uninterrupted, work-free 30-minute meal periods, or one hour's wages in lieu thereof, for shifts in excess of five hours. Nor did Clearview provide Plaintiffs and Class Members with a second uninterrupted, work-free 30-minute meal period for shifts in excess of 10 hours.

45.    In fact, Clearview maintained a policy and practice of reprimanding its Counselors for taking meal breaks. For example, on or about July or August of 2017, Plaintiff Slaughter was working her shift while one of her co-Counselors left the residence to take a lunch break. Clearview's Clinical Director, Alina Gorgorian, inquired as to the co-Counselor's whereabouts and was informed by Plaintiff Slaughter that the co-Counselor went to lunch. Upon returning from lunch, Plaintiff Slaughter's co-Counselor was admonished by Ms. Gorgorian, was told that she should not have left the residence, and that if she wanted to take a break she needed to ask Ms. Gorgorian for permission.

46.    Shortly after this incident, Plaintiff Slaughter informed her co-Counselor that they are entitled to meal periods under California labor law and that Clearview's denial of such meal periods was illegal. The following day, Plaintiff Slaughter's co-Counselor emailed Clearview's Owner and Chief Executive Officer, Defendant Michael Roy, and relayed to him the information she learned from Plaintiff Slaughter regarding Clearview's meal period violations. Defendant Roy responded to the email and had a meeting with the co-Counselor and Clinical Director Gorgorian to discuss the situation.

47.    On or about September 2017, in response to the above-referenced

meeting between Plaintiff Slaughter's co-Counselor, Defendant Roy, and Clinical Director Gorgorian, Clearview added a half hour to the a.m. and p.m. shifts to account for a meal period and purported to start providing meal periods to Plaintiffs and Class Members for a.m. and p.m. shifts in excess of five hours. *See, generally*, September 1, 2017 email from Clinical Director Gorgorian to Clearview's Counselors, attached hereto as ***Exhibit C***.

> Hi everyone, I know there are a lot of questions coming in re the lunch breaks and the new shifts. All of your questions are welcome and will help us to iron out some of the wrinkles since we are just starting this change. Please don't hesitate to contact me, [Program Manager] Liz [Gherna], or [Administrative Director] Emily Cohen with any questions. Please be patient with us and we will have it all figured out in the next week or so. Thanks!

*Id.*[2]

48.    As part of its implementation of these purported meal periods, Clearview instructed its a.m. and p.m. shift Counselors to start recording daily meal periods on their timesheets, without regard for whether or not Plaintiffs and Class Members ever actually receive an uninterrupted, 30-minute meal period. In reality, Plaintiffs and Class Members are often unable to take these newly scheduled meal periods due to Clearview's policy and practice of understaffing and overworking its Counselors, yet a.m. and p.m. shift Counselors are compelled to record daily meal periods on their timesheets, even on days when they do not receive a 30-minute, uninterrupted meal period.

49.    Though Clearview purported to start providing scheduled meal periods to a.m. and p.m. shift Counselors beginning in approximately September 2017, Clearview refused to provide meal periods, or one hour's wages in lieu thereof, to

---

[2] *See also* Plaintiff Purnell's timesheets, July 2017 – January 2018, reflecting a complete lack of meal period recording until September 2017, when Defendants purported to start providing meal periods to its a.m. and p.m. shift Counselors. ***Exhibit D***, Purnell Timesheets.

Plaintiffs and Class Members for overnight shifts in excess of five hours.

50.     Egregiously, when Plaintiff Slaughter complained to Clearview's management that she and other similarly situated employees were not provided with 30-minute meal periods for overnight shifts in excess of five hours, and that they were not being compensated for these missed meal periods, she was told by Emily Cohen, Clearview's Administrative Director, that,

> As far as the overnight shift goes, there was not a half hour added to that shift to account for meal periods. All other shifts are 8.5 hours to accommodate a meal time. When employees are unable to take a lunch during an 8.5 hour shift due to a clinical emergency or low staffing employees are compensated accordingly.

Email exchange between Plaintiff Slaughter and Administrative Director Cohen, October 27, 2017 - November 2, 2017, attached hereto as ***Exhibit E***.

51.     Plaintiff Slaughter responded, correctly, that meal periods are required for shifts in excess of five hours and that Clearview is required to compensate its employees for missed meal periods,

> I know lunch breaks were included on a.m. shifts and p.m. shifts however they weren't included on overnight shifts. I'm assuming night shift isn't given lunch breaks because there was only one person on staff overnight. To my understanding a lunch break is required after five hours. Since there isn't any way for overnight staff to take a lunch break. Shouldn't it be paid?

*Id*.

52.     Ms. Cohen responded that she will take up the issue with Clearview's Chief Executive Officer, Defendant Michael Roy. "HI Tanisha - Michael Roy is out of the office today - I plan on meeting with him about this on Monday and will get back to you by Tuesday at the latest. Sorry for the delay." *Id*.  Shortly thereafter, Plaintiff Slaughter was terminated.

53.     Given the content of the above email exchange between Plaintiff

Slaughter and Administrative Director Cohen, it cannot be plausibly argued that Clearview—including its Chief Executive Officer, Defendant Michael Roy—was unaware of its California Labor Code meal period violations, and there is no conceivable way for Clearview to establish that it acted in good faith in refusing to provide its Counselors with uninterrupted, work-free 30-minute meal periods for shifts in excess of five hours.

54.    Further, as reflected in the above email exchange between Plaintiff Slaughter and Administrative Director Cohen, Plaintiffs and Class Members are often unable to take meal periods during the a.m. and p.m. shifts due to low staffing. In these instances, Administrative Director Cohen contends that "employees are compensated accordingly." *Id.* However, to lawfully compensate its Counselors for missed meal periods, Clearview is required to pay the Counselor one hour's wages (*i.e.*, the meal period premium) *in addition to* regular wages that are owed for time worked during the meal period. For example, if a Counselor who earns $15.00 per hour is unable to take a meal period, Clearview is required to pay the Counselor: 1) $15.00, which represents one hour's wages (*i.e.*, the meal period premium), and 2) $11.25, which represents wages owed to the Counselor for time worked during the 30-minute meal period, calculated using his or her overtime premium rate of pay.[3] On information and belief, Clearview failed to pay one hour's wages to Plaintiffs and Class Members for missed meal periods stemming from things such as clinical emergencies or low staffing, as required under Labor Code Section 226.7 and Wage Order 5-2001, ¶11, and/or failed to compensate Plaintiffs and Class Members for time worked during 30-minute meal periods at their overtime premium rates of pay.

***Waivers and On-Duty Meal Periods***

---

[3] Since working through the meal period causes Counselors to exceed eight hours worked during the 8 ½ hour a.m. and p.m. shifts, wages owed to Counselors for time worked during the meal period are calculated using the overtime premium rate (*i.e.*, one and one-half times the Counselor's regular rate of pay).

55.    Undoubtedly recognizing its California Labor Code meal period violations, Clearview Program Manager Liz Gherna sent a December 11, 2017 email to Clearview's Counselors instructing them to immediately sign and return two attached documents: 1) On-Duty Meal Period Agreement, and 2) Standing Meal Period Waiver, attached hereto as ***Exhibit F***.

56.    California's meal period rules allow employees to waive meal periods or agree to on-duty meal periods in certain, limited circumstances. As an initial matter, it is essential to understand that in all instances when an employee works through a meal period, he or she must be paid because it is time worked. Therefore, if an employee works through a meal period and is appropriately paid for such working time, the only remaining issue is whether *the extra hour of premium pay* is owed, in addition to the pay for time worked. There are three instances when premium pay is not owed:

(a)    When no meal period is required and may be waived by mutual consent of the employer and employee "when a work period of not more than six (6) hours will complete the day's work" (Wage Order, Section 11).

(b)    When the second meal period is not required because the total hours worked is no more than 12 hours, the first meal period "was not waived," and the employer and employee mutually agree (Labor Code, Section 512).

(c)    When the on-duty meal period meets the requirements of the Wage Order (Wage Order, Section 11).

57.    In the first two instances, an employee may work through a required meal period if all of the conditions above are met. In both instances, the employer and the employee must mutually agree to forgo the required meal period.

58.    With the employee's agreement to forgo the meal period, an employer commits no violation of the first meal period and owes no premium pay when the employee works only six hours. With the employee's agreement, the employer commits no violation of the second meal period when the employee works no more

than 12 hours, but only if the *first* meal period was not waived.

59.     The third exception addresses the on-duty meal period. If an employee is not afforded a 30-minute uninterrupted meal break for every five hours worked, the employer must compensate the employee for one additional hour of pay for each workday that the meal break is missed. California Labor Code § 226.7. Sometimes, in an attempt to circumvent this law, employers ask employees to sign forms agreeing to take "on-duty" meal periods. However, on-duty meal periods are permissible only under very limited circumstances. On-duty meal periods are only legal if:

   (a)   The nature of the work prevents the employee from being relieved of all duty;

   (b)   The employer and the employee agree to on-duty meal periods in writing;

   (c)   The meal period is paid; and

   (d)   The agreement to waive the meal period can be revoked at any time in writing by the employee. Wage Order 5-2001, ¶11.

60.     Under this narrow exception to the general rule that employers must provide off-duty meal periods, an employer who opts to implement on-duty meal periods carries the burden of establishing that the facts justify an on-duty meal period. *Abdullah v. U.S. Sec. Associates, Inc.,* 731 F.3d 952, 961 (9th Cir. 2013); see also *Dynabursky v. AlliedBarton Sec. Services LP*, No. 12-CV-2210 JLS, 2014 WL 12690698, at *4–5 (C.D. Cal. Jan. 29, 2014). Because on-duty meal periods are limited alternatives to the off-duty meal requirement, various factors are considered when analyzing employer-mandated on-duty meal periods. If an employer has a qualified representative who can perform the duties, the on-duty meal exception may not apply. *Dynabursky*, 2014 WL 12690698, at *11-12 (citations omitted). However, if a position calls for an employee to be on duty at all times and that employee is the sole employee of a particular employer, the exception may apply. *Id.*

61.     The issue becomes whether the employer can demonstrate that "the

nature of the work prevents the employee from being relieved of all duty." Wage Order 5-2001, ¶11(A). California courts have not elaborated on the scope of the "nature of the work" exception. But the Division of Labor Standards Enforcement ("DLSE") has provided the following factors to be considered in deciding whether a "nature of the work" exception applies:

> (1) [T]he type of work, (2) the availability of other employees to provide relief to an employee during a meal period, (3) the potential consequences to the employer if the employee is relieved of all duty, (4) the ability of the employer to anticipate and mitigate these consequences such as by scheduling the work in a manner that would allow the employee to take an off-duty meal period, and (5) whether the work product or process will be destroyed or damaged by relieving the employee of all duty.

*Abdullah*, 731 F.3d at 959 n.12 (citing DLSE Opinion Letter 2009.06.09 at 7).[4]

62.    Here, Clearview has a blanket policy mandating that all Counselors waive their meal periods and agree to take "on-duty" meal breaks. Clearview requires Plaintiffs and Class Members to sign meal period waivers and on-duty meal period agreements, *see **Exhibit F***, despite the fact that a.m. and p.m. shift Counselors work with multiple other Counselors at all times, and these Counselors are available to relieve each other of their duties so that they may take uninterrupted, 30-minute meal periods. In short, Clearview's blanket meal period waivers and on-duty meal period agreements are unrelated to the nature of the Counselors' work, but instead stem from Clearview's decision to understaff and overwork its Counselors.[5] For these and

---

[4] For guidance on the exception, the *Abdullah* Court looked to California DLSE opinion letters, which state that the exception is a "limited alternative" that must be "narrowly construed," and that "the employer has the burden to establish the facts that would justify an on-duty meal period." *See Abdullah*, 731 F.3d at 959 (quoting DLSE Op. Letter 2009.06.09 at 7; DLSE Op. Letter 2002.09.04 at 2).

[5] *See Abdullah*, 731 F.3d at 963-64, 967 (The Ninth Circuit concluded that the district court did not abuse its discretion by certifying a meal break sub-class of security guards. Although the defendant had argued that the duties of its security officers and the characteristics of the worksites varied, the Ninth Circuit held that the differences were not relevant, as the reason the security officers were prevented from taking an on-duty meal break was the defendant's decision to staff

numerous other reasons, an on-duty meal period was not justified, and Clearview cannot meet its burden of demonstrating otherwise. Accordingly, the meal period waivers and on-duty meal period agreements that Clearview required its Counselors to sign did not relieve Clearview of its obligation to compensate Plaintiffs and Class Members *an extra hour of premium pay* for each missed meal period, in addition to wages for time worked. At any rate, the issue of whether Defendants' uniform policy mandating meal period waivers and on-duty meal period agreements violates the Labor Code and Wage Order No. 5 is eminently suitable for class treatment.[6]

**Rest Breaks**

63.   In addition to the meal period violations described above, Clearview also failed to provide Plaintiffs and Class Members with uninterrupted, work-free rest periods for shifts in excess of four hours throughout their employment with Clearview; yet Plaintiffs and other similarly situated individuals were not compensated for these missed rest periods. Pursuant to Wage Order 5-2001, ¶12, employers are required to provide rest periods as follows:

- Employers must "authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work

---

only one guard at each post).

[6] *See Brinker Rest. Corp. v. Super. Ct.*, 273 P.3d 513, 532 (Cal. 2012) ("The theory of liability—that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment."); *Faulkinbury v. Boyd & Associates, Inc.*, 156 Cal. Rptr. 3d 632, 643 (Cal. App. 4th Dist. 2013) ("*Brinker* leads us … to conclude Boyd would be liable upon a determination that Boyd's uniform on-duty meal break policy was unlawful. … [T]he employer's liability arises by adopting a uniform policy that violates the wage and hour laws. Whether or not the employee was able to take the required break goes to damages, and '[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion.'") (citation omitted); *Bradley v. Networkers Intl., LLC*, 150 Cal. Rptr. 3d 268, 284–85 (Cal. App. 4th Dist. 2012) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."); *Bufil v. Dollar Fin. Group, Inc.*, 76 Cal. Rptr. 3d 804, 811 (Cal. App. 1st Dist. 2008) (concluding that the plaintiff's theory that "two circumstances—single employee on duty or providing training—do not come within the 'nature of the work' exception" was "a legal question" that could be resolved on a class-wide basis).

period";

- The rest periods shall be paid and shall be "10 minutes net rest time per four (4) hours or major fraction thereof," although "a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours;" and

- "If an employer fails to provide an employee a rest period," the employer "shall pay the employee one (1) hour of pay."

64. Notwithstanding the Wage Order requirements cited above, Clearview failed to provide its Counselors with a paid 10 minute rest period for every four hours or major fraction thereof worked.

65. As noted above, any failure by an employer to provide a required meal or rest period results in an obligation by the employer to pay one additional hour at the employee's regular rate per work day for a missed or late meal period and an additional hour per day for a missed rest period. Wage Order 5-2001, ¶¶11-12. These one-hour premiums constitute wages and are in addition to regular wages that are owed for any time worked, including any time worked during meal periods.

**Wage Statement and Waiting Time Violations**

66. Labor Code Section 226 requires employers to provide employees an accurate itemized statement showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece units and rates if applicable, (4) all deductions, (5) net wages earned, (6) the inclusive date of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect and the corresponding number of hours worked. Plaintiffs are informed and believe, and thereon allege that Clearview failed to provide Plaintiffs and similarly situated individuals with accurate itemized statements, reflecting accurate gross wages, accurate net wages, and accurate hours worked, as required by Labor Code § 226.

22

67.     Moreover, Clearview failed and refused to pay accrued wages and other compensation earned and due within 72 hours to Class Members who ended their employment with Clearview, and failed and refused to pay wages and other compensation earned and due immediately to Plaintiff Slaughter and similarly situated individuals who were terminated by Clearview.

## **Exemplary Pay Periods**

68.     Upon information and belief, Clearview pays Plaintiffs and all other similarly situated Counselors on a semi-monthly basis (twice a month). Examples of Clearview failing to pay Plaintiffs  overtime for hours worked in excess of eight hours per day (as mandated by the California Labor Code) or 40 hours per week (as mandated by the FLSA and the California Labor Code), and failing to provide meal and rest breaks or one hour's wages in lieu thereof (as mandated by the California Labor Code), include the following:

Pay Period Ending 07-16-17

- Clearview paid Plaintiff Slaughter for 62.75 hours at her regular hourly rate ($15.40 per hour) and 4 hours at her overtime rate ($23.10 per hour). ***Exhibit G***, Slaughter Paystubs.

- With a modest estimate of five minutes per day spent checking and responding to work-related emails, calls, and texts during non-work hours, in a three- to four-day work week,[7] Plaintiff Slaughter should have been paid an additional 35 minutes at her overtime rate.

- Additionally, pursuant to Clearview's failure to provide Plaintiffs and all other Counselors with uninterrupted, work free 30-minute meal periods for shifts in excess of five hours and uninterrupted, work-free 10-minute rest periods for shifts in excess of four hours, in a three- to four-day work week, Plaintiff Slaughter should have been paid an additional 14 hours at her regular rate.

Pay Period Ending 08-27-17

---

[7] Throughout the course of her employment with Clearview, Plaintiff Slaughter regularly worked three to four days per week.

23

- Clearview paid Plaintiff Purnell for 78.75 hours at her regular hourly rate ($15.00 per hour), 17 hours at her overtime rate ($22.50 per hour), and 5.75 hours at twice her regularly hourly rate ($30.00 per hour). ***Exhibit H***, Purnell Paystubs.

- With a modest estimate of five minutes per day spent checking and responding to work-related emails, calls, and texts during non-work hours, in a five-day work week, Plaintiff Purnell should have been paid an additional 50 minutes at her overtime rate.

- Additionally, pursuant to Clearview's failure to provide Plaintiffs and all other Counselors with uninterrupted, work free 30-minute meal periods for shifts in excess of five hours and uninterrupted, work-free 10-minute rest periods for shifts in excess of four hours, in a five-day work week, Plaintiff Purnell should have been paid an additional 20 hours at her regular rate.

## Clearview Benefitted from the Off-the-Clock Work and Missed Meal and Rest Periods

69.     At all relevant times, Clearview directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described off-the-clock activities, and in connection with the work performed by Plaintiffs and Class Members during meal and rest periods.

70.     At all relevant times, Clearview controlled the work schedules, duties, protocols, assignments and employment conditions of Plaintiffs and Class Members.

71.     At all relevant times, Clearview was able to track the amount of time Plaintiffs and the Class Members spent in connection with off-the-clock activities, and in connection with missed meal and rest periods. However, Clearview failed to do so and failed to compensate Plaintiffs and Class Members for the off-the-clock work they performed, and for missed meal and rest periods.

72.     At all relevant times, Clearview's policies and practices deprived Plaintiffs and the Class Members of wages owed for off-the-clock activities they performed, and for wages owed in connection with missed meal and rest periods. Because Clearview's Counselors typically worked eight hours or more per day and

40 hours or more in a workweek, Clearview's policies and practices also deprived them of overtime pay.

73.    Clearview knew or should have known that the time spent by Plaintiffs and Class Members in connection with off-the-clock activities is compensable under the law. Similarly, Clearview knew or should have known that they were obligated to provide Plaintiffs and Class Members with meal and rest periods in accordance with the provisions of Wage Order 5-2001, ¶¶ 11-12, and that any failure by Clearview to provide the required meal and rest periods results in an obligation by Clearview to pay one additional hour at the Counselor's regular rate per work day for a missed or late meal period and an additional hour per day for a missed rest period, in addition to regular wages that are owed for any time worked during meal periods.

74.    Despite knowing that Plaintiffs and Class Members performed work before and after their scheduled shifts, Clearview failed to make any effort to stop or disallow the off-the-clock work and instead suffered, permitted, and even ordered it to happen.

75.    Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs and Class Members at the overtime premium of one and one-half their regular hourly rate because Plaintiffs and the Class Members regularly worked in excess of eight hours per day and/or 40 hours in a workweek.

76.    Despite knowing that Plaintiffs and Class Members were not provided with uninterrupted, work-free 30-minute meal periods for every five hours worked and were not provided with uninterrupted, work-free 10-minute rest periods for every four hours or major fraction thereof worked, Clearview failed and refused to pay Plaintiffs and Class Members one hour's wages for each work day that Plaintiffs and Class Members were denied a meal period and one hour's wages for each work day that Plaintiffs and Class Members were denied a rest period. *See* Wage Order 5-2001, ¶¶ 11-12. These one-hour premiums for missed meal and rest periods constitute wages and are in addition to regular wages that are owed for any time worked,

including any time worked during meal periods.

## Mutual Agreement to Arbitrate

77.    Shortly before the filing of this action—and in response to Plaintiff Slaughter's efforts to recruit other current and former Counselors to join this action—Defendants engaged in an eleventh hour attempt to thwart this litigation by mandating that its hourly employees, including Plaintiff Purnell and the other Counselors, sign a "Mutual Agreement To Arbitrate," purporting to 1) require the parties to arbitrate all claims and disputes, and 2) waive employees' rights to arbitrate on a class, collective or representative basis. *See* Mutual Agreement To Arbitrate, ¶¶1-2, attached hereto as ***Exhibit I***.

78.    On January 9, 2018, The Mutual Agreement To Arbitrate (hereinafter, the "Arbitration Agreement" or "Agreement") was imposed upon Plaintiff Purnell and other hourly employees via email, with no explanation regarding its content, no explanation of the consequences should Class Members refuse to sign, no opportunity to negotiate its terms, no bargained-for consideration in return, and no opportunity to consult with independent legal counsel. Indeed, Defendants indicated to Plaintiffs and Class Members that signing the Arbitration Agreement was *mandatory* and imposed a 24-hour deadline to sign and return the Agreement.

79.    The Agreement further states that, "Employee has been advised and given an opportunity to discuss this Agreement with attorneys of Employee's choice and Employee has used that opportunity to the extent Employee wished to do so." *Id*. at ¶9. This statement is blatantly false when examined against Defendants' conduct. As noted above, Defendants imposed a 24-hour deadline for Plaintiffs and Class Members to sign and return the Agreement - hardly sufficient time to solicit independent legal advice. Even worse, employees were instructed to direct any questions regarding the Agreement to Emily Cohen, Clearview's Administrative Director – the same individual who explicitly acknowledged Clearview's meal period violations in an email exchange with Plaintiff Slaughter. *See **Exhibit E.***

80.     Moreover, in connection with Defendants' attempt to coerce Plaintiffs and Class Members to sign the Arbitration Agreements, Defendants' intentionally omitted material information by failing to inform Plaintiffs and Class Members that the purpose of the Agreement was not "to obtain the benefit of a speedy, impartial and cost-effective dispute resolution procedure," *Exhibit I* at p. 1, but to thwart an FLSA and California Labor Code collective/class action that *Defendants knew was imminent*. Therefore, any Agreement obtained by Defendants was procured through material misrepresentations and omissions, or outright fraud; thus rendering invalid any signatures obtained by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former Counselors who worked for Clearview at any time after February 12, 2015 and through the date of Judgment.*

(Hereinafter referred to as the "Collective.") Plaintiffs reserve the right to amend this definition as necessary.

82.     Excluded from the proposed Collective are Clearview's executives, administrative and professional employees, and outside sales persons.

83.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

84.     The employment relationships between Clearview and every Collective member is the same and differ only by name, location, and rate of pay. The key

issues – whether Clearview failed to pay Counselors for all hours worked, including pre- and post-shift work activities and whether such time is compensable – do not vary substantially among the Collective members.

85.    Plaintiffs estimate the Collective, including both current and former employees over the relevant period, will include over 100 members. The precise number of Collective members should be readily available from a review of Clearview's personnel and payroll records.

## RULE 23 CALIFORNIA CLASS ACTION ALLEGATIONS

86.    Plaintiffs brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former Counselors who worked for Clearview at any time after February 12, 2014 and through the date of Judgment.*

(Hereinafter referred to as the "Rule 23 California Class"). Plaintiffs reserve the right to amend this definition as necessary.

87.    The members of the Rule 23 California Class are so numerous that joinder of all Class Members in this case would be impractical. Plaintiffs reasonably estimate there are at least 100 Rule 23 California Class Members. Rule 23 California Class Members should be easy to identify from Clearview's computer systems and electronic payroll and personnel records.

88.    <u>Commonality</u>. There is a well-defined community of interest among Rule 23 California Class Members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 California Class. These common legal and factual questions include, but are not limited to, the following:

> a. Whether Clearview denied Plaintiffs and the Rule 23 California Class overtime pay to which they were entitled pursuant to the California Labor Code, the California Industrial Welfare Commission's ("IWC") Wage Orders, and all other applicable employment laws and

regulations;

b. Whether Clearview failed to compensate Plaintiffs and the Rule 23 California Class for all hours worked;

c. Whether Clearview denied Plaintiffs and the Rule 23 California Class meal and rest periods to which they were entitled by law and failed to compensate Plaintiffs and the Rule 23 California Class for missed meal and rest periods;

d. Whether Clearview failed to provide Plaintiffs and the Rule 23 California Class with accurate itemized wage statements;

e. Whether Clearview failed to compensate Plaintiffs and the Rule 23 California Class within the time prescribed by law upon termination or resignation;

f. Whether Clearview engaged in unfair business practices;

g. Whether Clearview's conduct was willful.

89. <u>Numerosity</u>. Plaintiffs reasonably estimate there are at least 100 Rule 23 California Class Members. This size makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Rule 23 California Class as a plaintiff in this action is impracticable. The identity of the Rule 23 California Class Members will be determined from Clearview's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Rule 23 California Class and Clearview.

90. <u>Typicality</u>. Plaintiffs' claims are typical of those of the Rule 23 California Class in that they and all other Rule 23 California Class Members suffered damages as a direct and proximate result of Clearview's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies,

practices, promises and course of conduct as all other Rule 23 California Class Members' claims and their legal theories are based on the same legal theories as all other Rule 23 California Class Members.

91.    <u>Adequacy</u>. Plaintiffs will fully and adequately protect the interests of the Rule 23 California Class and have retained counsel who are qualified and experienced in the prosecution of California wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 California Class.

92.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 California Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in California state and federal courts.

93.    <u>Manageability</u>. This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Clearview has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Rule 23 California Class Members will be promoted. Additionally, class treatment in this matter will provide for judicial consistency.

94.    Notice of the pendency and any resolution of this action can be provided to the Rule 23 California Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of Rule 23 California Class Members is readily identifiable from Clearview's records.

95.    This type of case is well-suited for class action treatment because: (1) Clearview's practices, policies, and/or procedures were uniform; (2) the burden is on

Clearview to prove that it properly compensated Plaintiffs and Class Members; and (3) the burden is on Clearview to accurately record hours worked by employees.

96.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97.     Because Clearview acted and refused to act on grounds that apply generally to the Rule 23 California Class and declaratory relief is appropriate in this case with respect to the Rule 23 California Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### FIRST CAUSE OF ACTION
**Failure To Pay Overtime**
**(Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.)**
**On Behalf of Plaintiffs and the FLSA Collective**

98.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

99.     At all times relevant to this action, Clearview was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

100.   At all relevant times to this action, Clearview has engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

101.   At all times relevant to this action, Plaintiffs and the members of the Collective were "employees" of Clearview within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

102.   Plaintiffs and the members of the Collective were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

103.   Clearview has had, and continues to have, an annual gross business volume in excess of $500,000.

104.  At all times relevant to this action, Clearview "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

105.  The FLSA requires each covered employer such as Clearview to compensate all nonexempt employees at a rate of not less than one-and-a-half times their "regular rate" of pay for work performed in excess of forty hours in a workweek.

106.  Clearview failed to pay Plaintiffs and the FLSA Collective all overtime pay due by failing to incorporate time spent checking and responding to emails, calls, and texts during non-work hours into the calculation of their hours worked. Plaintiffs estimate that they and all other Class Members spent approximately five to 20 or more minutes per day performing these off-the-clock activities.

107.  In addition, Clearview failed to pay Plaintiffs and the FLSA Collective for arriving to work 15 minutes before their scheduled shifts, even though this pre-shift work was essential to the Counselors' job duties and Clearview was aware that Plaintiffs and Class Members were performing this pre-shift work. During this time, Plaintiffs and the FLSA Collective were under Clearview's total control. Much of this time qualifies as overtime hours worked, but Clearview did not pay overtime compensation to Plaintiffs and the FLSA Collective for this pre-shift, off-the-clock work.

108.  Plaintiffs and the FLSA Collective were entitled to be paid overtime compensation for all overtime hours worked at the rate of one and one-half times their "regular rate" of pay.

109.  At all relevant times, Clearview required Plaintiffs and the FLSA Collective to work in excess of forty hours per workweek. Despite the hours worked by them, Clearview willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay Plaintiffs and the FLSA Collective the appropriate overtime wages for all compensable time worked in excess of forty hours per workweek. By

failing to compensate Plaintiffs and the FLSA Collective at a rate of not less than one-and-a-half times the "regular rate" of pay for work performed in excess of forty hours in a workweek, Clearview has violated the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

110.  Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of their damages, unpaid wages and unpaid overtime pay.

111.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

112.  Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of their attorneys' fees and costs to be paid by Clearview, as provided for by 29 U.S.C. § 216(b).

113.  Plaintiffs, on behalf of themselves and the FLSA Collective, seek recovery of liquidated damages.

114.  As a result of Clearview's willful and unlawful failure to pay Plaintiffs all of their earned overtime wages, Plaintiffs are entitled to recover their unpaid overtime wages, costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

115.  Plaintiffs, on behalf of themselves and the FLSA Collective, seek damages in the amount of the respective unpaid overtime compensation owed, liquidated damages from three years immediately preceding the filing of this action, plus interest and costs as allowed by law, pursuant to 29 U.S.C. §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION
**Failure To Pay Overtime**
**(California Labor Code §§ 510 and 1194)**
**On Behalf of Plaintiffs and the Rule 23 California Class**

116.  Plaintiffs incorporate all other paragraphs as though fully set forth herein.

117.   At all relevant times, Clearview was required to compensate its nonexempt employees for all hours worked. Since at least four years prior to the date this lawsuit was filed, Clearview was required to compensate all of its employees for all overtime worked at one-and-a-half times their "regular rates" of pay for hours worked in excess of eight hours per day or forty hours per workweek and double-time for hours worked in excess of 12 hours per day. Clearview was also required to pay one-and-a-half times the "regular rate" for the first eight hours worked on the seventh day of a workweek.

118.   Clearview failed to pay Plaintiffs and Class Members all overtime and double-time pay due by failing to incorporate off-the-clock work performed by Plaintiffs and Class Members into the calculation of their regular rate, including time spent 1) arriving to work 15 minutes prior to their scheduled shifts, and 2) checking and responding to emails, calls, and texts during non-work hours.

119.   Despite the provisions of California's overtime law, Clearview has willfully failed and refused to pay the Class Members, including Plaintiffs, overtime wages for all of the overtime hours they worked.

120.   The Class Members, including Plaintiffs, have been deprived of their rightfully earned overtime wages as a direct and proximate result of Clearview's failure and refusal to pay such compensation.

121.   Clearview's conduct violates California Labor Code §§ 510 and 1194. Therefore, pursuant to California Labor Code § 1194, the Rule 23 California Class Members, including Plaintiffs, are entitled to recover, and seek to recover, damages for the nonpayment of overtime wages for all overtime hours worked in excess of eight hours per day, in excess of forty hours per workweek, for the first eight hours worked on the seventh day of a workweek, and double-time pay for the hours worked in excess of twelve in a day in addition to interest on such amounts pursuant to California Labor Code § 1194, plus reasonable attorneys' fees and costs of suit, and the relief requested below in the Prayer for Relief.

### THIRD CAUSE OF ACTION
**Failure To Pay Minimum Wage**
**(California Labor Code §§ 1182.12, 1194, 1194.2, 1197 and 1198)**
**On Behalf of Plaintiffs and the Rule 23 California Class**

122.   Plaintiffs incorporate all other paragraphs as though fully set forth herein.

123.   At all relevant times, Plaintiffs and the Rule 23 California Class earned "wages" for labor or services rendered to Clearview within the meaning of California Labor Code § 200(a) and/or for "hours worked" within the meaning of the applicable Wage Order of the Industrial Wage Commission.

124.   Employers are required to pay their employees for all hours worked. During all relevant times, Clearview failed to properly pay Plaintiffs and Class Members for all the hours they worked and/or were subject to Clearview's control, and failed to properly record all hours worked by Class Members. For example, Clearview allowed, encouraged, or required Plaintiffs and Class Members to start work before their scheduled shift while under the complete control of Clearview and while clocked out. Further, Clearview allowed, encouraged, or required Plaintiffs and the Class Members to check and respond to emails, calls, and texts during non-work hours, yet Clearview failed to compensate Plaintiffs and the Class Members for this off-the-clock work.

125.   Clearview improperly withheld, deducted, and/or refused to pay wages for hours that Plaintiffs and Class Members worked.

126.   Clearview's conduct deprived Plaintiffs and the Class Members of full and timely payment for all hours worked in violation of the California Labor Code.

127.   Clearview did not properly pay Plaintiffs and the Class Members by, *inter alia*, failing to pay them for all hours worked, in violation of California Labor Code §§ 1182.12, 1194, 1197, and/or 1198.

128.   As a result of Clearview's willful and unlawful failure to pay Plaintiffs and the Class Members their earned wages, Plaintiffs and the Class Members are

entitled to recover their unpaid wages, liquidated damages, costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

### FOURTH CAUSE OF ACTION
**Unlawful Deductions**
**(California Labor Code §§ 221 and 223)**
**On Behalf of Plaintiffs and the Rule 23 California Class**

129. Plaintiffs incorporate all other paragraphs as though fully set forth herein.

130. Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

131. Labor Code § 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Labor Code § 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

132. At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

133. Defendants made deductions from Plaintiffs' and the Class Members' paychecks in the amount of the overtime premiums earned by the employee during the pay period so as to avoid paying overtime compensation.

134. At all times relevant hereto, Clearview has failed to pay Plaintiffs and the Class Members designated rates for all hours worked, meaning the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work, whether or not required to do so.

135. At all times relevant hereto, Clearview has paid less than the agreed upon compensation owed to Plaintiffs and the Class Members, while purporting to

pay the designated wage scale. As a result, Clearview's conduct violates Labor Code § 223.

136.   At all times relevant hereto, Clearview has willfully failed to keep the records required by Labor Code § 1174. By failing to maintain adequate time records as required by Labor Code § 1174(d) and Wage Order 5-2001, ¶7(A), Clearview has made it difficult to calculate the compensation due Plaintiffs and the Class Members.

137.   As a result of the conduct alleged above, Defendants unlawfully collected or received from Plaintiffs and the Class Members part of the wages paid to their employees.

138.   Clearview owes Plaintiffs and the Class Members wages at the designated rate pursuant to the Labor Code in amounts to be determined at trial for the hours worked during the relevant time period.

139.   Plaintiffs and the  Class Members request payment of unpaid wages at the designated rate in amounts to be determined at trial, interest, and attorneys' fees and costs against Clearview in a sum as provided by the Labor Code and/or other statutes and the relief requested below in the Prayer for Relief.

**FIFTH CAUSE OF ACTION**
**Failure To Provide Meal And Rest Periods**
**(California Labor Code §§ 226.7 and 512)**
**On Behalf of Plaintiffs and the Rule 23 California Class**

140.   Plaintiffs incorporate all other paragraphs as though fully set forth herein.

141.   Wage Order 5-2001 provides that "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and

counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." Wage Order 5-2001, ¶11(A).

142.   Wage Order 5-2001 further provides, in part, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes rest time per four (4) hours or major fraction thereof…. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Wage Order 5-2001, ¶12(A).

143.   Labor Code Sections 226.7 and 512, and Wage Order 5-2001, ¶¶11(B) and 12(B) require Defendants to provide employees all meal and rest periods specified in the applicable Wage Order. These laws and regulations further entitle employees to be paid one additional hour of pay per day at their regular rate of compensation for each day of denied meal period, in addition to one additional hour of pay per day at their regular rate of compensation for each day of denied rest period, during the relevant statutory periods.

144.   Clearview failed and refused to provide Plaintiffs and Class Members with 1) uninterrupted, work-free 30-minute meal periods for every five hours worked, and 2) uninterrupted, work-free 10-minute rest periods for every four hours or major fraction thereof worked. In addition, Clearview failed and refused to pay Plaintiffs and Class Members one hour's wages for each work day that Plaintiffs and Class Members were denied a meal period and one hour's wages for each work day that Plaintiffs and Class Members were denied a rest period.

145.   On or about September 2017, Clearview purported to start providing meal periods to Plaintiffs and Class Members for a.m. and p.m. shifts in excess of five hours, and instructed its a.m. and p.m. shift Counselors to start recording daily

meal periods on their timesheets, without regard for whether or not Plaintiffs and Class Members actually receive an uninterrupted, 30-minute meal period. In reality, Plaintiffs and Class Members are often unable to take these newly scheduled meal periods due to Clearview's policy and practice of understaffing and overworking its Counselors, yet a.m. and p.m. shift Counselors are compelled to record daily meal periods on their timesheets, even on days when they do not receive a 30-minute, uninterrupted meal period.

146.   Though Clearview purported to start providing scheduled meal periods to a.m. and p.m. shift Counselors beginning in approximately September 2017, Clearview failed and refused to provide meal periods, or one hour's wages in lieu thereof, to Plaintiffs and Class Members for overnight shifts in excess of five hours.

147.   On or about December 2017, Clearview employed a uniform, blanket policy mandating that all Counselors execute meal period waivers and on-duty meal period agreements, despite the fact that a.m. and p.m. shift Counselors work with multiple other Counselors at all times and that these Counselors are available to relieve each other of their duties so that they may take uninterrupted, 30-minute meal periods. Because Clearview's meal period waivers and on-duty meal period agreements are unrelated to the nature of the Counselors' work—but instead stem from Clearview's decision to understaff and overwork its Counselors—an on-duty meal period was not justified, and Clearview cannot meet its burden of demonstrating otherwise. Accordingly, the meal period waivers and on-duty meal period agreements that Clearview required its Counselors to sign did not relieve Clearview of its obligation to compensate Plaintiffs and Class Members *an extra hour of premium pay* for each missed meal period, in addition to wages for time worked.

148.   At all relevant times, Plaintiffs and Class Members consistently worked in excess of five or 10 hours per day. Yet Defendants consistently failed and refused to provide Plaintiffs and Class Members with uninterrupted, work-free 30-minute meal periods, or one hour's wages in lieu thereof, for shifts in excess of five hours

worked. Further, Defendants consistently failed and refused to provide Plaintiffs and Class Members with uninterrupted, work-free rest periods of not less than 10 minutes, or one hour's wages in lieu thereof, for every four hours or major fraction thereof worked.

149.    Plaintiffs are informed and believe and thereon allege that Clearview's failure to provide meal and rest periods, or one hour's wages in lieu thereof, was willful, purposeful, and unlawful and done in accordance with the policies and practices of Clearview's operations. As a result of Clearview's knowing and intentional policies and procedures, Plaintiffs and Class Members were not provided with meal and rest periods, or one hour's wages in lieu thereof.

150.    Plaintiffs are informed and believe and thereon allege that Clearview did not properly maintain records pertaining to when Plaintiffs and Class Members began and ended each meal period, in violation of Labor Code §1174 and Wage Order 5-2001, ¶7(A).

151.    As a result of Clearview's knowing, willful, and intentional failure to provide meal and rest periods, Plaintiffs and Class Members are entitled to recover one additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to Labor Code § 226.7 and Wage Order 5-2001, ¶11(B), in addition to one hour of pay at the employee's regular rate of pay for each work day that a rest period was not provided, pursuant to Labor Code § 226.7 and Wage Order 5-2001, ¶12(B), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code § 218.5.

152.    Wherefore, Plaintiffs demand pursuant to Labor Code §§ 226.7, 227.7, and 512, and Wage Order 5-2001, ¶¶11(B) and 12(B), that Defendants pay each Class Member one additional hour of pay at the Class Member's regular rate of compensation for each work day that the meal period was not provided and one additional hour of pay at the Class Member's regular rate of compensation for each work day that the rest period was not provided, in addition to wages owed to each

Class Member for time worked during meal periods at the Class Member's applicable regular, overtime, or double-time rate of pay, and the relief requested below in the Prayer for Relief.

## SIXTH CAUSE OF ACTION
### Failure to Provide Accurate Wage Statements
### (California Labor Code § 226)
### On Behalf of Plaintiffs and the Rule 23 California Class

153.   Plaintiffs incorporate all other paragraphs as though fully set forth herein.

154.   California Labor Code § 226 provides that an employer shall furnish its employees with accurate itemized statements in writing showing gross wages earned and total hours worked by the employee, among other items of information.

155.   During all relevant times, Clearview knowingly and willfully violated California Labor Code § 226 by failing to provide Plaintiffs and the Class Members with accurate wage statements as alleged herein. Clearview knowingly and willfully violated said Labor Code provision by providing Plaintiffs and Class Members with wage statements that systematically undercounted the number of hours that Plaintiffs and Class Members worked. Clearview is therefore liable to Plaintiffs and the Class Members for providing inaccurate wage statements in violation of Labor Code § 226.

156.   Plaintiffs, individually and on behalf of the Rule 23 California Class, respectfully request that the Court award all penalties due and the relief requested below in the Prayer for Relief.

## SEVENTH CAUSE OF ACTION
### Waiting Time Penalties
### (California Labor Code §§ 201-203)
### On Behalf of Plaintiffs and the Rule 23 California Class

157.   Plaintiffs incorporates all other paragraphs as though fully set forth herein.

158.   Pursuant to California Labor Code § 201, if an employer discharges an

employee, the wages earned and unpaid at the time of the discharge are due and payable immediately. Pursuant to California Labor Code § 202, if an employee quits or resigns his or her employment, the wages earned and unpaid at the time of the discharge are due and payable within 72 hours of the resignation.

159.    Plaintiffs are informed and believe that Class Members, including Plaintiff Slaughter, have resigned or were terminated from their employment with Clearview and have not received the overtime compensation and other wages they rightfully earned pursuant to California Labor Code §§ 201-202.

160.    Defendants, and each of them, willfully refused, and continue to refuse, to pay Plaintiffs and the Class Members all wages earned, including overtime premium wages and premium wages for missed meal and rest periods, in a timely manner as required by California Labor Code § 203.

161.    Plaintiffs, individually and on behalf of the Rule 23 California Class, respectfully request that the Court award all penalties due and the relief requested below in the Prayer for Relief.

**EIGHTH CAUSE OF ACTION**
**California PAGA Claims**
**(California Labor Code §§ 2698 - 2699.5)**
**On Behalf of Plaintiffs and aggrieved employees**

162.    Plaintiffs incorporate all other paragraphs as though fully set forth herein.

163.    Under the California Private Attorneys General Act ("PAGA") of 2006, Cal. Labor Code §§ 2698-2699.5, an aggrieved employee, on behalf of himself or herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders. These civil penalties are in addition to any other relief available under the Cal. Labor Code, and must be allocated 75% to California's Labor and Workforce Development

Agency ("LWDA") and 25% to the aggrieved employee, pursuant to Cal. Labor Code § 2699.

164. Pursuant to Cal. Labor Code § 1198, Clearview's failure to pay proper compensation to Plaintiffs and the Rule 23 California Class Members, and failure to provide Class Members with accurate wage statements, constitute violations of the Cal. Labor Code, each actionable under PAGA.

165. Plaintiffs allege, on behalf of themselves and the Rule 23 California Class, as well as the general public, that Clearview has violated the following provisions of the Cal. Labor Code and the following provisions of Cal. Wage Orders that are actionable through the Cal. Labor Code and PAGA, as previously alleged herein: Cal. Labor Code §§ 510, 1194, Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1198, Cal. Labor Code § 221, 223, Cal. Labor Code §§ 226.7, 512, Cal. Labor Code §§ 201-203, 205, and Cal. Labor Code § 226. Each of these violations entitle Plaintiffs, as private attorneys general, to recover the applicable statutory civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

Cal. Labor Code § 2699(a), which is part of PAGA, provides in pertinent part:

Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in § 2699.3.

Cal. Labor Code § 2699(f), which is part of PAGA, provides in pertinent part:

For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a

43

violation of these provisions, as follows: … (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

166.   Plaintiffs are entitled to civil penalties, to be paid by Clearview and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(a) for Clearview's violations of the Cal. Labor Code and IWC Wage Orders for which violations a civil penalty is already specifically provided by law. Further, Plaintiffs are entitled to civil penalties, to be paid by Clearview and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(f) for Clearview's violations of the Cal. Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

167.   Provided the LWDA has not informed Plaintiffs within the time period prescribed by Labor Code § 2699.3 that it intends to investigate the provisions of the California Labor Code that Clearview has violated, and continues to violate, Plaintiffs will seek the remedies allowable by law under PAGA. At that time, Plaintiffs will have timely exhausted all administrative procedures required of them under Labor Code §§ 2698, 2699 and 2699.3, and as a result, will be justified as a matter of right in bringing this cause of action.

168.   Under PAGA, Plaintiffs and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the Cal. Labor Code that are alleged in this Complaint, including but not limited to penalties pursuant to Labor Code §§ 210, 225.5, 226.3, 558, 1174.5, 1197.1, and 2699 (f).

169.   Plaintiffs, on behalf of themselves and all Rule 23 California Class Members, also request further relief set forth herein.

///

///

///

44

### NINTH CAUSE OF ACTION
**Unlawful and/or Unfair Competition Law Violations
(California Business & Professions Code § 17200 *et seq*.)
On Behalf of Plaintiffs and the Rule 23 California Class**

170.    Plaintiffs incorporate all other paragraphs as though fully set forth herein.

171.    California Business & Professions Code § 17200 *et seq*. prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practice.

172.    Plaintiffs bring this cause of action individually and as representatives of all others subject to Clearview's unlawful acts and practices.

173.    During all relevant times, Clearview committed unlawful, unfair, and/or fraudulent acts as defined by California Business & Professions Code § 17200. Clearview's unlawful, unfair, and/or fraudulent business practices include, without limitation, failing to pay overtime wages, failing to pay overtime wages at the correct rate, failing to pay minimum wages, failing to pay wages at the designated rate, and failing to provide employees with accurate wage statements.

174.    As a result of these unlawful and/or unfair and/or fraudulent business practices, Clearview reaped unfair benefits and illegal profits at the expense of Plaintiffs and the Class Members. Clearview must disgorge these ill-gotten gains and restore to Plaintiffs and the Class Members all wrongfully withheld wages, including, but not limited to minimum wages and overtime compensation.

175.    Plaintiffs, individually and on behalf of the Rule 23 California Class, respectfully request that judgment be awarded to provide restitution and interest, and the relief requested below in the Prayer for Relief.

### PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, all aggrieved employees, the FLSA Collective Members, and the Rule 23 California Class Members, pray for relief as

follows:

    A. Certifying that this action may proceed as an FLSA collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    B. Designating the named Plaintiffs as representatives of the proposed FLSA Collective;

    C. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

    D. Certifying the proposed Rule 23 Class;

    E. Designating Plaintiffs as representatives of the proposed Rule 23 Class;

    F. Declaring that Clearview's policies and/or practices of failing to pay overtime wages to the FLSA Collective Members violates the FLSA;

    G. Declaring that Clearview's policies and/or practices of failing to pay overtime wages, failing to pay minimum wages, failing to pay wages at the designated rate, failing to provide meal and rest periods or one hour's wages in lieu thereof, failing to provide accurate wage statements, and failing to pay all wages earned in a timely manner violate California law;

    H. Declaring that Clearview's above-mentioned policies and/or practices violate California Business and Professions Code § 17200 *et seq.*;

    I. Preliminary, permanent, mandatory injunctive relief prohibiting Clearview, its officers, agents, and all those acting in concert with it, from committing in the future those violations of law herein alleged;

    J. Awarding damages, liquidated damages, restitution, and/or statutory and civil penalties and interest thereon as allowed by law to be paid by Clearview for the causes of action alleged herein;

    K. Awarding costs and expenses, including reasonable attorneys' fees and

expert fees, pursuant to 29 U.S.C. § 216, state law, and as otherwise permitted by law;

L. Awarding class representative service payments to Plaintiffs and all other class representatives for their service to the FLSA Collective Members, the Rule 23 California Class Members, and the public; and

M. Ordering such other and further legal and equitable relief the Court deems just, necessary and proper.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a trial by jury.

DATED:  February 12, 2018          By: */s/ Kevin J. Stoops*
                                         **SOMMERS SCHWARTZ, P.C.**
                                         Kevin J. Stoops (*pro hac vice* forthcoming)
                                         Rod M. Johnston (*pro hac vice* forthcoming)
                                         One Towne Square, 17th Floor
                                         Southfield, Michigan 48076
                                         Telephone: 248-355-0300
                                         Facsimile: 248-746-4001
                                         Email: kstoops@sommerspc.com
                                       Email: rjohnston@sommerspc.com

                                By: /s/ David Yeremian
                                         **DAVID YEREMIAN & ASSOCIATES, INC.**
                                         David Yeremian (Cal. Bar No. 226337)
                                       david@yeremianlaw.com
                                       535 N. Brand Blvd., Suite 705
                                       Glendale, California 91203
                                       Telephone: (818) 230-8380
                                       Facsimile: (818) 230-0308

                                  *Attorneys for Plaintiffs and Proposed Collective and Class members*